UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

SOHO 25 RETAIL, LLC,                                Ch. 11 Case No. 10-15114 (SHL)

                      Debtor.
----------------------------------------------------------------X
Soho 25 Retail, LLC,

                      Plaintiff,
          v.
                                                           Adv. Pro. No. 11-1286 (SHL)

Bank of America, N.A. as trustee for
the Registered Holders of GS Mortgage
Securities Corporation II, Commercial
Mortgage Pass-Through Certificates,
Series 2006-GG8,
                      Defendant.
----------------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER
REGARDING THE DEBTOR'S RIGHT TO RENTAL PAYMENTS**

A P P E A R A N C E S:

ROSEN & ASSOCIATES, P.C.
Attorneys for Debtor/Plaintiff
747 Third Avenue
New York, New York 10017-2803
      Nancy L. Kourland, Esq.

McCARTER & ENGLISH, LLP
Attorneys for Movant/Defendant
245 Park Avenue, 27th Floor
New York, New York 10167
      Eduardo J. Glas, Esq.

**SEAN H. LANE
United States Bankruptcy Judge:**

       Before this Court is the question of whether rents from certain debtor owned real estate

are property of the bankruptcy estate or property of the debtor's mortgage lender by virtue of an

assignment of rents executed between the two parties.

1

On January 3, 2011, Bank of America, N.A., as trustee for the Registered Holders of GS Mortgage Securities Corporation II, Commercial Mortgage Pass-Through Certificates Series 2006-GG8 (the "Lender"), filed a motion requesting relief from the automatic stay pursuant to Section 362(d) of the Bankruptcy Code.[1]  In that motion, the Lender sought to continue foreclosure proceedings against 25 West Houston Street in New York City ("25 Houston" or the "Property"), which is owned by debtor 25 Soho Retail, LLC (the "Debtor").  Some three weeks after the motion was filed, the Debtor filed a complaint against the Lender asserting, among other claims, that the rents from 25 Houston are property of Debtor's bankruptcy estate and have been improperly collected by the Lender.[2]  Three days after filing its Complaint, the Debtor also filed an objection to the motion.[3]

On February 7, 2011, this Court held a hearing on the Lender's motion.  At the hearing, the Court and the parties agreed that the question of whether the rents belong to the bankruptcy estate or to the Lender is a threshold issue for the Lender's motion to lift stay, the Debtor's Complaint, and the Debtor's ultimate reorganization.[4]  Given the state of the record at the hearing, the Court denied the motion without prejudice to permit the parties to supplement their briefing on the rent issue.  The parties agreed that their briefing, as supplemented, would

---

[1]  The Lender's motion was filed at ECF docket number 21.  Unless otherwise indicated, all ECF docket citations herein refer to chapter 11 case number 10-15114 (SHL).

[2]  The Debtor's Complaint was filed on January 28, 2011 at ECF docket number 30, initiating adversary proceeding number 11-1286 (SHL).

[3]  The Debtor's objection to the Lender's motion was filed on January 31, 2011 at ECF docket number 31 (the "Objection").  Further responses and replies were filed by the parties at ECF docket numbers 33, 34, 35, and 36 of chapter 11 case number 10-15114 (SHL) and ECF docket numbers 5 and 6 of adversary proceeding number 11-1286 (SHL).

[4]  The Debtor filed a plan of reorganization on December 27, 2010.  According to the Complaint, "[c]onfirmation and implementation of the Debtor's Plan [are] premised upon the Debtor's use of the Rents."  Complaint ¶ 21.

2

constitute cross motions for summary judgment as to the proper ownership of these rents, an issue presented in Count I of the Complaint.

For the reasons set forth below, this Court concludes that the rents are not property of the Debtor's estate and instead rightfully belong to the Lender. Accordingly, the Court grants summary judgment to the Lender on Count I of the Complaint.

## BACKGROUND[5]

The Debtor owns certain condominium units at 25 Houston, which serves as ground floor retail space that the Debtor leases to three commercial tenants. Complaint ¶¶ 6-7.

Pursuant to a loan agreement dated July 31, 2006 between the Debtor and Greenwich Capital Financial Products, Inc. ("Greenwich"), the Debtor borrowed $8,500,000 from Greenwich as evidenced by an Amended and Restated Promissory Note (the "Note"). Id. ¶ 8. To secure repayment of the Note, the Debtor executed (1) a Mortgage and Mortgage Consolidation dated July 31, 2006 in favor of Greenwich (collectively, the "Mortgage"), and (2) an Assignment of Leases and Rents dated July 31, 2006 (the "Assignment"). Id. ¶ 9. The Note, Mortgage, and Assignment (collectively, the "Loan Documents") were assigned from Greenwich to Wells Fargo Bank, N.A., and thereafter, to the Lender.[6] Id. ¶¶ 10-11.

---

[5] There do not appear to be any material facts in dispute. The facts are based upon the Complaint and the Declaration of Alex J. Guggenheim in Support of Motion of Bank of America, as Trustee, for Entry of an Order Pursuant to Section 362(d) of the Bankruptcy Code Granting Relief from the Automatic Stay dated December 26, 2010 as filed by the Lender at ECF docket number 24 ("Guggenheim Declaration"). The facts in the Complaint are further supported by the Debtor's Local Rule 1007-2 Declaration filed on September 28, 2010 at ECF docket number 1.

[6] In connection with the Loan Documents, Wells Fargo Bank, N.A. acted as trustee for the Registered Holders of GS Mortgage Securities Corporation II, Commercial Mortgage Pass-Through Certificates, Series 2006-GG8, which is the same trustor as that of the Lender. See Complaint at 1-3 and Guggenheim Declaration ¶ 9, Exhibit H. On March 22, 2011, the Lender notified the Court that Bank of America, N.A. resigned as trustee and a new trustee, U.S. Bank, N.A., has been appointed and the Loan Documents are in the process of being transferred to the new trustee. See ECF docket number 41. Throughout all relevant times, the trustor has remained the same.

**A.      Assignment of Rents**

The Assignment grants the Lender expansive rights regarding rental payments derived from the Property.[7] For example, the Assignment provides:

> [The Debtor] hereby authorizes [the Lender] or its agents to collect the Rents; provided, however, that prior to an Event of Default, and subject at all times to the requirement that payments and deposits of Rents be made directly to the Clearing Account, [the Debtor] shall have a revocable license, but limited as provided in this Assignment and in any of the other Loan Documents, to otherwise deal with, and enjoy the rights of the lessor under, the Leases."

Complaint Ex. C, Assignment ¶ 2(a) (emphasis added). The Assignment further explains that, even prior to any default, the Lender's rights regarding the rents are broader than a mere security interest:

> As part of the consideration for the Debt, [the Debtor] does hereby absolutely and unconditionally assign to [the Lender] all right, title and interest of [the Debtor] in and to all present and future Leases and Rents, and this Assignment constitutes a present and absolute assignment and is intended to be unconditional and not as an assignment for additional security only. It is further intended that it not be necessary for [the Lender] to institute legal proceedings, absent any requirements of law or regulation to the contrary, to enforce the provisions hereof.

Id. (emphasis added).

Of particular relevance here, the Assignment provides additional rights to the Lender regarding the rents in the event of a default:

> [U]pon the occurrence and during the continuation of an Event of Default, [the Debtor] does hereby irrevocably appoint [the Lender] as its attorney-in-fact with full power, in the name and stead of [the Debtor] to demand, collect, receive and give complete acquittance for any and all of the Rents now due or that may hereafter become due . . . .

---

[7] The Assignment also contains multiple recitals, including: "WHEREAS, this Assignment is being given as additional security for the Loan . . . ." Complaint Ex. C, Assignment at 1.

4

<u>Id.</u> ¶ 7 (emphasis added).  Notably, the Assignment makes clear that the Lender's rights regarding the rents are not contingent upon the Lender taking control of the property or even initiating action to take such control:

> Upon the occurrence and during the continuance of an Event of Default, and <u>without the necessity of [the Lender] entering upon and taking and maintaining full control of the Property in person, by agent or by court-appointed receiver</u>, the license referred to in paragraph (a) above shall immediately be revoked and [the Lender] shall have the right at its option, to exercise all rights and remedies contained in the Loan Documents, or otherwise available at law or in equity."
>
> * * * *
>
> [The Lender] may, at its option, without waiving such Event of Default and without regard to the adequacy of the security for the Debt . . . <u>without bringing any action or proceeding, or by a receiver appointed by a court, without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents</u>, including those past-due and unpaid, for application to the payment of the Debt in accordance with the terms of the Loan Documents . . . ."

<u>Id.</u> ¶¶ 2(b), 5(a) (emphasis added).

**B.    Debtor's Defaults**

In 2009, the Debtor defaulted under the Loan Documents by failing to make timely payments under the Note.  Complaint ¶ 12; Objection ¶¶ 2, 15; Guggenheim Declaration ¶ 13.  In a letter dated June 18, 2009, the Lender sent the Debtor a notice of default setting forth the remedies to be exercised by the Lender.  Guggenheim Declaration ¶ 20, Exhibit P.  The notice of default advised the Debtor that, "by virtue of the Defaults, the [Debtor's] license to collect rents from the [Property] is terminated and the Lender is entitled to all present and past due rents."  <u>Id.</u> The notice of default continued:

> Demand is hereby made on the [Debtor] to retain the rents, received by or on behalf of the [Debtor] on or after the date of default, for the benefit of the Lender.  Failure to retain the rents for

5

> the benefit of the Lender constitutes conversion. The Lender is entitled to the funds in the Reserve Accounts, as such term is defined in the Loan Documents.

Id.

In letters dated November 16, 2009, March 9, 2010, and September 14, 2010, the Lender instructed tenants of the Property to pay rent directly to the Lender. Guggenheim Declaration ¶¶ 22-23, Exhibits Q-R. In a joint letter dated November 3, 2010, the Debtor and the Lender together instructed one of the Property tenants to pay rent directly to the Lender. Guggenheim Declaration ¶ 24, Exhibit S.

## C.    Legal Proceedings

Given the Debtor's failure to satisfy its obligations under the Note, the Lender filed a foreclosure action against the Debtor in the Supreme Court of New York on November 13, 2009. Complaint ¶ 12. The foreclosure action included a demand for the appointment of a rent receiver. Guggenheim Declaration ¶ 14, Exhibit K. The Debtor did not answer or otherwise appear in the foreclosure action.[8] Complaint ¶ 13; Objection ¶ 16.

On May 19, 2010, the Supreme Court of New York entered a default judgment against all defendants in the foreclosure action. Complaint ¶ 13. Pursuant to the order entering default, a referee was appointed to "ascertain and compute . . . the amount due to the [Lender] under the Loan Documents . . . and to examine and report . . . whether the mortgaged premises can be sold in one parcel."[9] Guggenheim Declaration ¶ 15, Exhibit L.

---

[8] By the Debtor's own admission, the Debtor failed to appear in the foreclosure action because "the Debtor had no good faith defense" to the action. Objection ¶ 16.

[9] The referee was appointed pursuant to 22 N.Y.C.R.R. 36, which governs the appointment of receivers and referees among other state court appointees. Notably, the order granted the Lender's application "in all respects." Guggenheim Declaration ¶ 15, Exhibit L.

The referee issued its report dated July 12, 2010, finding that the Debtor owed the Lender $11,919,133.77 for principal, interest, and other fees under the Loan Documents.[10]  Guggenheim Declaration ¶ 16, Exhibit M.  Pursuant to a judgment of foreclosure and sale dated August 11, 2010, the referee was directed to sell the Property in one parcel.  The August 2010 judgment also provided that the Debtor, after the filing of a "Notice of Pendency," be "hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the [Property] and each and every part thereof . . . ."  Guggenheim Declaration ¶ 17, Exhibit N.

A public auction to sell the Property was scheduled for September 29, 2010.  Complaint ¶ 13.  Before the auction could proceed, however, the Debtor commenced this bankruptcy case under chapter 11 of title 11 of the United States Code on September 28, 2010.  Id. ¶ 3; Objection ¶ 17.  The bankruptcy petition describes the Debtor's business as a "single asset real estate" case as defined in Section 101(51B) of the Bankruptcy Code.  ECF docket number 1.  The Debtor is a New York limited liability corporation.  Complaint ¶ 6.

## DISCUSSION

A.    **Subject Matter Jurisdiction**

This Court's subject matter jurisdiction is defined in 28 U.S.C. §§ 157 and 1334. Breeden v. Erie Islands Resort & Marina, Inc. (In re Bennett Funding Grp., Inc.), 2003 WL 174328, 2003 Bankr. LEXIS 41, at *10-11 (Bankr. N.D.N.Y. Jan. 2, 2003) (citing Plaza at Latham v. Citicorp, N.A., 150 B.R. 507, 510 (N.D.N.Y. 1993)).  "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11 . . . and may

---

[10] The Lender appears to be undersecured because it is owed more than the Property is worth.  The Debtor's balance sheet as of December 31, 2009 reflects a book value, net of depreciation, of $2,774,753.  Schedule A filed on October 19, 2010 at ECF docket number 9; see also Exhibit C to the Debtor's petition filed on September 28, 2010 at ECF docket number 1.  According to an appraisal dated December 20, 2010, the Property is worth approximately $7,300,000.  ECF docket number 23, Exhibit E; see Claims Register, Claim No. 4 (Lender's claim for "not less" than $12,192,058.46).

7

enter appropriate orders and judgments . . . ." 28 U.S.C. § 157(b)(1). Core proceedings include, but are not limited to: matters concerning the administration of the estate; orders to turn over property of the estate; motions to terminate, annul, or modify the automatic stay; confirmations of plans; and orders approving the use or lease of property, including the use of cash collateral. 28 U.S.C. § 157(b)(2)(A)(E)(G)(L)(M). The instant dispute is a core proceeding because it is fundamental to the administration of the Debtor's estate, the nature and extent of the Debtor's property interests, and the Debtor's ability to effectuate a plan of reorganization.

**B.    Summary Judgment**

Federal Rule of Civil Procedure 56(a), incorporated into bankruptcy practice by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be rendered if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Cordius Trust v. Kummerfeld (In re Kummerfeld), 2011 WL 108339, 2011 Bankr. LEXIS 84, at *26-27 (Bankr. S.D.N.Y. Jan. 13, 2011) (quoting Fed. R. Civ. P. 56(a)). In evaluating whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Gladstone Bus. Loan, LLC v. Randa Corp., 2010 WL 4983263, 2010 U.S. Dist. LEXIS 130101, at *7 (S.D.N.Y. Dec. 8, 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Where no triable issue of material fact exists, summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules. Cordius Trust v. Kummerfeld, 2011 Bankr. LEXIS 84, at *29 (Bankr. S.D.N.Y. Jan. 13, 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)).

**C.    New York Law Controls**

While the federal Bankruptcy Code determines what may constitute property of the estate, "state law determines the nature of the debtor's interest in a given item." Sapir v. Hudson

8

Realty Co. (In re Rosalind Gardens Assocs.), 157 B.R. 75, 80 (Bankr. S.D.N.Y. 1993) (citing In re Koreag Controle Et Revision S.A., 961 F.2d 341, 349 (2d Cir.), cert. denied, 113 S. Ct. 188, (1992)); In re Country Squire Assocs. of Carle Place, L.P., 1998 Bankr. LEXIS 1909, at *20 (Bankr. N.D.N.Y. Sept. 30, 1998) (citing Butner v. United States, 440 U.S. 48, 54-55 (1979)) ("The Supreme Court has decided that, like the determination of property ownership in a bankruptcy context, the issue of whether a security interest in estate property extends to rents derived from the property is one that must be resolved by reference to state law.").

Similarly, a security interest in rents is defined by reference to the law of the state in which the real property is located. In re Carmania Corp. N.V., 154 B.R. 160, 163 (S.D.N.Y. 1993) ("Carmania") (citing Butner v. United States, 440 U.S. 48 (1979)). In this case, the Property is situated in New York, and the Loan Documents state that they shall be governed by and construed in accordance with the laws of New York. Not surprisingly then, the parties agree that New York law applies to the instant dispute.

**D.    Absolute Assignments**

The parties vigorously dispute the legal effect of the Assignment. The Debtor contends that, under New York law, an assignment of rents is not self-executing and does not become effective until a lender affirmatively asserts its rights to those rents. The Debtor further argues that such affirmative steps were not taken here by the Lender. On the other hand, the Lender contends that the Assignment is absolute and self-executing and, therefore, the Lender was not required to take any affirmative steps to enforce its rights to the rents. Alternatively, the Lender argues that the affirmative steps it took here, including the appointment of a referee, were sufficient to grant the Lender the right to the rents.

The threshold question is whether the Assignment is absolute and thus effective regardless of whether the lender took any affirmative steps to protect its interest. The language of the Assignment supports the idea that the parties here intended an absolute assignment. The Assignment states that the Lender and the Debtor intend the Assignment to "be unconditional and not as an assignment for additional security only," creating "a present and absolute assignment" that would not require legal proceedings to enforce. Complaint Ex. C, Assignment ¶ 2(a). The Assignment clarifies that, before a default, the Debtor has only a revocable license in rent, and upon default, that license is revoked and full rights to the rent are returned to the Lender. Id. By its terms, therefore, the Assignment provided the Debtor with nothing more than a revocable license in rent, a license that was revoked after the Debtor defaulted under the Loan Documents.[11] Moreover, the Assignment explains that, upon a default by the Debtor, enforcement of the Assignment does not depend upon affirmative acts such as possession or the appointment of a receiver. Complaint Ex. C, Assignment ¶ 2(b) ("Upon the occurrence and during the continuance of an Event of Default, and without the necessity of [the Lender] entering upon and taking and maintaining full control of the Property in person, by agent or by court-appointed receiver, the license referred to in paragraph (a) above shall immediately be revoked and [the Lender] shall have the right at its option, to exercise all rights and remedies contained in the Loan Documents, or otherwise available at law or in equity.").

The Debtor argues that other provisions of the Assignment lead "to the inescapable conclusion that it was intended only as security for the Mortgage despite the inclusion of language that states it is unconditional and absolute." Objection ¶ 27. The Debtor relies on a recital, which explains that the Assignment "is being given as additional security." However,

---

[11] As noted above, the parties do not dispute that the Debtor defaulted under the Loan Documents, perhaps as early as June of 2009. See Complaint ¶ 12; Objection ¶¶ 2, 15; Guggenheim Declaration ¶ 13.

"[a]n expression of intent in a 'whereas' clause of an agreement between two parties may be useful as an aid in construing the rights and obligations created by the agreement, but it cannot create any right beyond those arising from the operative terms of the document." Credit Lyonnais v. Getty Square Assocs., 876 F. Supp. 517, 521 (S.D.N.Y. 1995) ("Credit Lyonnais") (quoting Genovese Drug Stores v. Connecticut Packing Co., 732 F.2d 286, 291 (2d Cir. 1984)). In any event, nothing in the language of the recital contradicts the other terms in the Assignment that set forth its unconditional nature.

      The Debtor also relies on language from sections 5, 6, 8, and 11 of the Assignment for the proposition that the Assignment was intended solely as additional security for the loan. Such a reading, however, is strained given the language in the remainder of the agreement and the limited legal significance normally accorded to the ancillary statements cited by the Debtor.

      Having reviewed the relevant language, the next question is whether an absolute assignment is recognized by New York law. The Lender points to a number of federal court cases suggesting that an absolute assignment is permissible where, as here, it is supported by the language of the agreement. See, e.g., Credit Lyonnais, 876 F. Supp. at 521 ("[W]here an assignment of rents is a present tense assignment of all rents to be held in trust for the benefit of the mortgage lender, the mortgage lender is entitled to all rents paid to the mortgagor from the date of the mortgagor's default."); Fed. Home Loan Mortg. Corp. v. Nora Assoc., 1992 WL 125520, 1992 U.S. Dist. LEXIS 7033, at *12 (S.D.N.Y. May 26, 1992) ("[The creditor's] entitlement to rents in the instant action is absolute and independent of any action it takes with respect to appointment of a receiver."); Fed. Home Loan Mortg. Corp. v. Dutch Lane Assoc., 775 F. Supp. 133, 139-40 (S.D.N.Y. 1991) ("Dutch Lane") ("Once the FHLMC notifies Dutch Lane in writing of a breach of the mortgage and states it is exercising its rent rights, the FHLMC

11

is immediately entitled to all rents without any further action required."); In re Loco Realty Corp., 2009 WL 2883050, 2009 Bankr. LEXIS 1724, at *16 (Bankr. S.D.N.Y. June 25, 2009) ("Loco Realty") ("Here, the language of . . . the mortgage clearly demonstrates than an absolute assignment of rents, and not a security interest, was executed."). But as Chief Judge Gonzalez recently observed, "New York law is, at best, unclear on the topic of whether an absolute assignment of rent transfers title to the rent upon execution of the instrument." Loco Realty, 2009 Bankr. LEXIS 1724, at *15.

  Indeed, the majority of New York state cases are of the view that an absolute assignment is not permitted, regardless of the language in the agreement. See, e.g., Lt Propco, LLC v. Carousel Ctr. Co., L.P., 68 A.D.3d 1695, 1696 (N.Y. App. Div. 4th Dep't 2009) ("Because New York operates under a lien theory as opposed to a title theory with respect to mortgages, the language used in the assignment instrument itself is not determinative of what rights are actually transferred."); Suderov v. Ogle, 149 Misc. 2d 906, 909 (N.Y. App. Term 1991) ("Whenever property is transferred, no matter in what form or by what conveyance, as security for a debt, the conveyance creates a mortgage and the parties are subject only to the obligations of a mortgagor and mortgagee."); Dream Team Assocs. v. Broadway City, 2003 NY Slip Op 50894U, 2003 WL 21203342, 2003 N.Y. Misc. LEXIS 592, at *6 (N.Y. Civ. Ct. May 7, 2003) ("When a lease is assigned as security for a mortgage, no matter what language is used in the instrument of assignment, no transfer of title to the lease can be effected."); Ganbaum v. Rockwood Realty Corp., 62 Misc. 2d 391, 393 (N.Y. Sup. Ct. 1970) ("[A]n assignment of rents clause in a mortgage is not self-executing, but becomes effective only upon foreclosure or upon the appointment of a receiver of the rents of the mortgaged property."). See also Mooney v. Byrne, 163 N.Y. 86, 93 (N.Y. 1900) ("[A] conveyance, whatever its form, if in fact given to secure a

debt, is neither an absolute nor a conditional sale, but a mortgage, and that the grantor and grantee have merely the rights and are subject only to the obligations of mortgagor and mortgagee."); Carr v. Carr, 52 N.Y. 251, 260 (N.Y. 1873) ("[W]henever property is transferred, no matter in what form or by what conveyance, as a security for a debt, the transferred takes merely as a mortgagee, and has no other rights or remedies than the law accords to mortgagees."). But see Harris v. Lesster, 35 A.D. 462, 467 (N.Y. App. Div. 1898), appeal dismissed, 159 N.Y. 533 (1899) (finding an assignment described as "further security" to be "perfectly compatible" with an absolute assignment effectuated prior to the appointment of a receiver); Schlesinger v. Sanford Main Shopping Center, Inc., 37 Misc. 2d 840, 845 (N.Y. Sup. Ct. 1962) ("It has been held that the appointment of a receiver or the actual possession of the premises by the mortgagee are not essential to effectuate a valid assignment of rents, and that such assignment may be accomplished by special agreement.").

Ultimately, the Court does not need to resolve this murky legal question because the Lender here took sufficient affirmative steps to make the Assignment effective under New York law.

**E.    Affirmative Steps**

The parties do not dispute that, regardless of whether the Assignment is considered absolute or merely a pledge of additional security, the Lender is entitled to the rent if it took sufficient affirmative steps toward asserting its interest. See 641 Ave. of the Ams. Ltd. Partnership v. 641 Assocs., 189 B.R. 583, 591 (S.D.N.Y. 1995) ("641 Assoc."). Such affirmative steps can include: requesting the appointment of a receiver to collect the rents, demanding or taking possession, commencing foreclosure proceedings, or seeking an order for the sequestration of rents. See United States v. DiGiulio, No. 95-CV-219S, 1999 U.S. Dist.

13

LEXIS 16606, at *3-4 (W.D.N.Y. 1999) ("DiGiulio"); 641 Assocs., 189 B.R. at 591; Carmania, 154 B.R. at 165; In re Cerrico Realty Corp., 127 B.R. 319, 323 (Bankr. E.D.N.Y. 1991); In re Flower City Nursing Home, Inc., 38 B.R. 642, 645 (Bankr. W.D.N.Y. 1984) ("Flower City Nursing"); In re Pine Lake Village Apartment Co., 17 B.R. 829, 833 (Bankr. S.D.N.Y. 1982) ("Pine Lake Village").  Notably, the case law lists these examples of affirmative steps in the disjunctive.  The underlying idea is to reward "parties who are diligent in protecting their interests by requiring affirmative action by the secured party before an assignment of rents is enforceable."  Carmania, 154 B.R. at 165 (citing Vecchiarelli v. Garsal Realty, Inc., 443 N.Y.S.2d 622, 623 (1980)).

The most common factual situation in the case law on assignments involves the actual appointment of a receiver, instead of a mere request for a receiver.  Consistent with the notion to rewarding the diligent creditor, however, courts have concluded that affirmative steps short of the appointment of a receiver may also suffice.  For example, a number of cases analyzing New York law have concluded that the request for the appointment of a receiver is enough to vest the right to rents and profits.  See, e.g., DiGiulio, 1999 U.S. Dist. LEXIS 16606, at *3-4; Carmania, 154 B.R. at 165; Flower City Nursing, 38 B.R. at 645.  Similarly, the ultimate sale of property is not required and the commencement of foreclosure proceedings is sufficient.  641 Assocs., 189 B.R. at 591; Pine Lake Village, 17 B.R. at 834-35.  In a third variation on this theme, possession is not required as long as a formal demand for possession is met with refusal.  See Flower City Nursing, 38 B.R. at 645; Gomez v. Bobker, 124 A.D.2d 703, 704 (N.Y. App. Div. 2d Dep't 1986); 1180 Anderson Ave. Realty Corp. v. Mina Equities Corp., 95 A.D.2d 169, 174 (N.Y. App. Div. 1st Dep't 1983).

14

In the instant matter, the Court concludes that the Lender took numerous affirmative steps that are sufficient, as a matter of law, to now enforce its right to the rents. The Lender commenced a foreclosure proceeding against the Debtor. Complaint ¶ 12. The foreclosure proceeding included a request for the appointment of a receiver. Guggenheim Declaration, Exhibit K. As the Debtor did not answer or otherwise appear in the Foreclosure Action, the Supreme Court of New York filed an order entering default. Complaint ¶ 13. A rent referee was appointed and a foreclosure sale was scheduled. Id. The Lender's formal written demands of the Debtor and tenants also support this conclusion, as does a joint letter in which the Debtor and the Lender together demanded that a tenant pay rent directly to the Lender. See Guggenheim Declaration, Exhibits P-S.

The ultimate appointment of a referee instead of a receiver is not material to the instant dispute. In New York, the appointment of a receiver in a foreclosure action does not alter title to the property. Loco Realty, 2009 Bankr. LEXIS 1724, at *16; In re Koula Enters., 197 B.R. 753, 758 (Bankr. E.D.N.Y. 1996) ("Koula").

> The receiver acquires no title, but only the right of possession as the officer of the court. The title remains in those in whom it was vested when the appointment was made. The object of the appointment is to secure the property pending the litigation, so that it may be appropriate in accordance with the rights of the parties, as they may be determined by the judgment in the action.

Koula, 197 B.R. at 758 (quoting Greenwich Sav. Bank v. Samotas, 17 N.Y.S.2d 772, 774 (N.Y. Mun. Ct. 1940)). The referee here, like a receiver, was appointed by a court to take actions in connection with property leading up to an eventual sale and, therefore, that appointment constituted a significant affirmative step by the Lender.

In addition to its prepetition actions, the Lender also took a significant affirmative step to enforce its interests after the Debtor's bankruptcy filing by seeking relief from the automatic stay

15

that had been imposed by the Bankruptcy Code. See 11 U.S.C § 362; 641 Assocs., 189 B.R. at 591; Flower City Nursing, 38 B.R. at 645 ("[W]here a bankruptcy petition is filed staying such affirmative action by a mortgagee to perfect its interest in rent proceeds, a mortgagee's petition to lift the stay to obtain appointment of a foreclosure receiver will perfect the interest . . . ."); Pine Lake Village, 17 B.R. at 834-35 ("Not only did he commence a state court foreclosure action and an action to reinstate the managing agent in order to collect rents, but he also sought relief from the automatic stay in order to continue the state court foreclosure action.").

**F.      Property of the Estate**

Section 541 of the Bankruptcy Code defines the bankruptcy estate as including "all legal or equitable interests of the debtor in property as of the commencement of the case" wherever they are located and by whomever they are held. 11 U.S.C. § 541(a)(1). Such interests are defined by reference to state law. Koula, 197 B.R. at 757 (citing Butner v. United States, 440 U.S. 48 (1979); In re Prudential Lines, Inc., 928 F.2d 565 (2d Cir. 1991)).

An absolute assignment of rents prepetition does not necessarily mean that the estate has no interest in the rents for the purposes of Section 541 analysis. Loco Realty, 2009 Bankr. LEXIS 1724, at *17 (citations omitted). However, if a debtor has only an interest in the rents to the extent a mortgage is ever satisfied, the cash flow from the rents is not property of the estate until the mortgage is satisfied. Loco Realty, 2009 Bankr. LEXIS 1724, at *18-19. Therefore, until the Mortgage and Note here are satisfied, the rents are not property of the Debtor's estate and cannot be used by the Debtor to fund a plan of reorganization. See id. (citing First Fidelity Bank, N.A. v. Jason Realty, L.P. (In re Jason Realty, L.P.), 59 F.3d 423, 430 (3d Cir. 1995); Commerce Bank v. Mountain View Vill., 5 F.3d 34, 38 (3d Cir. 1993)).

Applying these principles here, the rents are not property of the estate because the Debtor had, at most, a revocable license in the rents at issue—a license that was revoked by the Lender prior to the Petition Date—and because the Mortgage and the Note remain unsatisfied.

## **CONCLUSION**

For the reasons set forth above, the Court finds that the rents are not property of the estate. Accordingly, summary judgment is granted to the Lender on Count I of the Complaint. As the Court understands that resolution of this issue will impact the remainder of the Debtor's Complaint and the Debtor's ultimate reorganization efforts, the Debtor shall promptly advise the Court regarding how it wishes to proceed in this case and how the Court's ruling today impacts any pending matters before the Court.

March 31, 2011
New York, New York                    */s/ Sean H. Lane*
                                      HONORABLE SEAN H. LANE
                                      UNITED STATES BANKRUPTCY JUDGE