ROSEN & ASSOCIATES, P.C.
Attorneys for the Debtor
 and Debtor in Possession
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Nancy L. Kourland

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re                                         Case No. 10-15114 (SHL)

SOHO 25 RETAIL, LLC,                          Chapter 11

                            Debtor.
---------------------------------------------------------x

## FURTHER RESPONSE OF THE DEBTOR AND DEBTOR IN POSSESSION TO MOTION OF U.S. BANK N.A., AS TRUSTEE, FOR AN ORDER PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE GRANTING IT RELIEF FROM THE AUTOMATIC STAY

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

        Soho 25 Retail, LLC, the above captioned debtor and debtor in possession (the

"**Debtor**"), by its attorneys, Rosen & Associates, P.C., in further response to the motion of U.S.

Bank N.A., as Trustee for Registered Holders of GS Mortgage Securities Corporation II,

Commercial Mortgage Pass-Through Certificates, Series 2006-GG8, for an order, pursuant to

section 362(d) of the Bankruptcy Code, granting it relief from the automatic stay to foreclose on

the Debtor's two retail condominium units, respectfully represents as follows:

        1.        On April 27, 2011, the Debtor filed its response to the Bank's Motion in

which it stated that it had commissioned its own appraisal from Grubb & Ellis Company, a

highly respected real estate advisory firm, and that it believed that because the appraisal would

provide evidence of the Debtor's equity in its property, U.S. Bank could not satisfy the inadequate protection or the lack of equity requirement of sections 362(d)(1) or 362(d)(2) of the Bankruptcy Code, respectively.

2.      The Debtor believes that U.S. Bank also has failed to carry its burden of proof to demonstrate its entitlement to relief "for cause" under section 362(d)(1) of the Bankruptcy Code based on the Debtor's alleged "bad faith" filing. In support of its objection to this alternative request for relief, the Debtor hereby adopts and incorporates by reference ¶¶ 40 – 56 of its January 31, 2011 response to Bank of America, N.A.'s stay relief motion [Document No. 31], a copy of which is annexed hereto as Exhibit "A."

3.      Based upon the foregoing, the Debtor respectfully requests that this Court deny the Motion and grant it such other and further relief as is just and proper.

Dated:  New York, New York
        May 3, 2011

                      ROSEN & ASSOCIATES, P.C.
                      Attorneys for the Debtor
                        and Debtor in Possession

                      By: /s/ Nancy L. Kourland
                           Nancy L. Kourland

                      747 Third Avenue
                      New York, NY 10017-2803
                      (212) 223-1100

# EXHIBIT A

ROSEN & ASSOCIATES, P.C.
Attorneys for the Debtor
 and Debtor in Possession
747 Third Avenue
New York, NY 10017-2803
212) 223-1100
Nancy L. Kourland

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                             Case No. 10-15114 (SHL)

SOHO 25 RETAIL, LLC,                              Chapter 11

                              Debtor.
----------------------------------------------------------x

**OBJECTION OF THE DEBTOR AND DEBTOR IN POSSESSION TO
MOTION OF BANK OF AMERICA, AS TRUSTEE, FOR AN ORDER
PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE
<u>GRANTING RELIEF FROM THE AUTOMATIC STAY</u>**

TO THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE:

        Soho 25 Retail, LLC, the above captioned debtor and debtor in possession (the

"**Debtor**"), by its attorneys, Rosen & Associates, P.C., respectfully objects to the motion (the

"**Motion**") of Bank of America (the "**Bank**"), as Trustee for Registered Holders of GS Mortgage

Securities Corporation II, Commercial Mortgage Pass-Through Certificates, Series 2006-GG8,

for an order, pursuant to sections 362(d)(1), 362(d)(2), and 362(d)(3)(A) of the Bankruptcy

Code, granting it relief from the automatic stay to foreclose on the Debtor's two retail

condominium units.

## PRELIMINARY STATEMENT

1.      In its Motion, the Bank first asserts that it is entitled to relief from the automatic stay under section 362(d)(2) of the Bankruptcy Code because "the Debtor has no equity in the Property" and the "the Debtor's plan is unconfirmable because its only source of funding is the [post-petition] rents, which belong to the Lender." Motion at ¶¶ 42, 43. The Bank's request for relief pursuant to section 362(d)(3)(A) of the Bankruptcy Code also is premised on its belief that such rents are not property of the estate and cannot be used by the Debtor to fund its plan. Finally, the Bank seeks relief under section 362(d)(1) of the Bankruptcy Code for "cause" based on its conclusion that the Debtor filed its petition in "bad faith." As discussed more fully below, all of the Bank's requests should be denied.

2.      As the Bank is well aware, for many years the Debtor generated more than sufficient cash flow to service its debt to the Bank. It later defaulted because two (2) of its three (3) tenants, MW Moss Ltd. and Jukam, Inc., had stopped paying the rent due under their leases. The Debtor received either partial or no monthly rental payments from Moss during the period from January 2009 to December 2009. Subsequently, in October 2009, Moss, through the Debtor's efforts, assigned its lease to Flos U.S.A. The Debtor effectuated the assignment with minimal expense, avoiding a brokerage commission of approximately $120,000. The Debtor also received either partial or no monthly rental payments from Jukam during the period from April 2008 to August 2009, when it vacated its space. Despite expending significant time and effort to relet the Jukam space, the Debtor was unable to do so until March 2010.

3.      The Declaration of Alex J. Guggenheim in support of the Motion is replete with allegations that the Debtor diverted rents. The Bank has offered no evidence to support this

allegation, nor can it. The allegation is untrue and is intended to prejudice the Debtor in the eyes of this Court. The Debtor respectfully submits that this Court should ignore the allegations in adjudicating the Motion.

4. Since the commencement of its case, the Debtor's rent roll has been sufficient to make pre-default debt service payments to the Bank. However, the Bank has turned a blind eye to New York law and improperly used its Assignment of Leases and Rents to collect all post-petition rents to which the Debtor has been entitled under its leases, in violation of the automatic stay provisions of the Bankruptcy Code. In its Motion, the Bank assumes its actions are correct, although they are not, and principally argues that the Debtor's inability to access the rents preordains the failure of its plan, which treats the Bank's claim as unimpaired pursuant to the provisions of section 1124 of the Bankruptcy Code.

5. The Debtor, as it did pre-petition, continues to make every effort to reach a consensual resolution of the Bank's claim. Unfortunately, however, the Bank, as it did pre-petition, continues to make every effort to thwart the Debtor's efforts. Since filing its petition, as the docket in this case indicates, the Debtor has timely complied with all of its obligations under the Bankruptcy Code and the Bankruptcy Rules, and it has prosecuted its case expeditiously and in good faith.

6. The Debtor filed its plan of reorganization (the "**Plan**") on December 27, 2010, within the time prescribed by section 362(d)(3)(A) of the Bankruptcy Code, that can be confirmed within a reasonable period of time. A third party investor, who has the financial wherewithal to meet the Debtor's Plan funding commitment, currently is negotiating with the Bank's loan servicer.

7.　　On September 28, 2010 (the "**Petition Date**"), the Debtor commenced in this Court a voluntary case under chapter 11 of the Bankruptcy Code.

8.　　The Debtor is continuing to operate its business and manage it properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.　　To date, no trustee, examiner, or creditors' committee has been appointed.

10.　　The Debtor, a New York limited liability corporation, owns certain condominium units in the building known as "Soho 25" located at 25 West Houston Street, New York, NY, designated and described as Unit Nos. Commercial 1 and Commercial 2 in the Declaration establishing a plan for the condominium ownership of "Soho 25" (the "**Property**").

11.　　The Property functions as ground floor retail space that the Debtor leases to three (3) commercial tenants, all of whom are currently paying rent.

12.　　Pursuant to a loan agreement dated as of July 31, 2006 with Greenwich Capital Financial Products, Inc. ("**Greenwich**"), the Debtor borrowed $8,500,000 from Greenwich which borrowing was evidenced by an Amended and Restated Promissory Note (the "**Note**").

13.　　To secure repayment of the Note, the Debtor executed (a) a Mortgage and Mortgage Consolidation dated July 31, 2006 in favor of Greenwich (collectively, the **Mortgage**") and (b) an Assignment of Leases and Rents dated as of July 31, 2006 (the "**Assignment**").  A copy of the Assignment is annexed hereto as Exhibit "A."

14.　　The Note, Mortgage, and Assignment were assigned to Wells Fargo Bank, N.A., as trustee for the Registered Holders of GS Mortgage Securities Corporation II,

Commercial Mortgage Pass-Through Certificates, Series 2006-GG8. Thereafter, the Note, Mortgage, and Assignment were assigned to the Bank.

15.     The Debtor failed to make certain timely payments under the Note and, consequently, on or about November 13, 2009, the Bank initiated a foreclosure action against the Debtor in the Supreme Court of New York, County of New York, Index No. 603472/09 (the "**Foreclosure Action**").

16.     Because the Debtor had no good faith defense to the Foreclosure Action, it did not answer or otherwise appear therein and on May 19, 2010, the Supreme Court of New York entered an Order Entering Default and appointed a Referee who thereafter filed a Report of Amount Due and scheduled for September 29, 2010 a public auction of the Property.

17.     Because the sale of the Property at auction would have divested the Debtor of its interest in the Property, the Debtor filed its chapter 11 petition in order to preserve such interest and its ability to reorganize.

18.     On December 27, 2010, prior to the filing of the Motion, the Debtor filed its plan of reorganization (the "**Plan**") under which the Bank's rights will not be impaired in accordance with section 1124(2) of the Bankruptcy Code. The Bank's claim (secured and undersecured) will be paid in full in cash on confirmation.[1]

19.     The Plan also provides for a distribution to general unsecured creditors of 25% of their allowed claims and payment in full to holders of administrative expense claims.

---

[1] Although the Bank's filed proof of claim states that it is owed $12,192,058.46, that amount includes a pre-payment penalty of $2,035,220.00. However, the loan documents do not entitle the Bank to such penalty and where a loan is cured and reinstated, as provided in the Debtor's Plan, the lender is not impaired, the parties are returned to the position they were in prior to the default, and no pre-payment penalty is due. MW Post Portfolio Fund Ltd. v. Norwest Bank Minnesota (In re Onco Investment Company), Case No. 04-10558, 2005 WL 2401908 at *2 n.3 (D.Del.Sept. 29, 2005).

There are no claims entitled to priority.

20.     The Debtor is preparing a related disclosure statement with respect to the Plan as well as a motion to approve the disclosure statement.

21.     The Debtor also has produced to the Bank all documents in its possession, custody, or control that are responsive to the Bank's Rule 2004 document request and this Court's order granting the Bank's Rule 2004 motion.  The Bank's deposition of the Debtor is scheduled for February 3, 2011 at 10:00 a.m.

## LEGAL ARGUMENT

**This Court must First Adjudicate the
Adversary Proceeding Filed by the Debtor**

22.     Although the Bank is seeking to have this Court determine the issue of whether the rents belong to the Debtor in the context of its Motion, Bankruptcy Rule 7001(2) requires that it be adjudicated in an adversary proceeding.  In re Pandeff, 201 B.R 865, 867-68 (Bankr. S.D.N.Y.1996) (commencing an adversary proceeding to determine the validity of an interest in property is a prerequisite to a determination of a lift stay motion); In re Keene Corp., 188 B.R. 881, 887 n.2 (Bankr.S.D.N.Y.1995).  Bankruptcy Rule 7001(2) provides in pertinent part:

> The following are adversary proceedings: . . .
>
> (2) to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d) . . . .

FED. R. BANKR. P. 7001(2).

23.     The Bank's failure to commence an adversary proceeding in which the issue is decided first, renders the Motion procedurally defective and not ripe for consideration, in

so far as the Bank seeks relief that is premised on its assumption that the rents are not estate property.

24.    On January 28, 2011, the Debtor, in accordance with Bankruptcy Rule 7001(2), filed a complaint commencing an adversary proceeding (the "**Adversary Proceeding**") against the Bank seeking a judgment declaring, among other things, that the rents are property of the Debtor's estate pursuant to section 541 of the Bankruptcy Code and the Debtor may use them under section 363 of the Bankruptcy Code.   The Debtor believes that it will prevail in the Adversary Proceeding and will be able to use the rents to fund the Plan.

**The Rents Belong to the Debtor Under New York State Law**

25.    The Bank asserts that "[u]nder New York law, the Lender has an absolute right to the Rents."  This is both a mischaracterization of the Assignment and a misstatement of the law in New York.  It also ignores general principles of contract interpretation.

26.    As the New York Court of Appeals stated in Matter of Westmoreland Coal Co. v. Entech, Inc., 100 N.Y.2d 352, 763 N.Y.S.2d 525, 794 N.E.2d 667 (2003), "a written contract 'will be read as a whole, and every part will be interpreted with reference to the whole: and if possible it will be so interpreted as to give effect to its general purpose' . . . The meaning of a writing may be distorted where undue force is give to single words or phrases."  Id. at 358 (quoting Empire Props. Corp. v. Manufacturers Trust Co., 288 NY 242, 248 (1942)).  A copy of the Assignment is attached hereto as Exhibit "A."

27.    Here, the Bank directs this Court's attention only to paragraph 2 of the Assignment and conveniently ignores several provisions that indicate clearly that the Assignment was given as security for the Mortgage.  A review of the following provisions of the Assignment,

however, leads to the inescapable conclusion that it was intended only as security for the

Mortgage despite the inclusion of language that states it is unconditional and absolute:

> (a) The fifth (5th) "WHEREAS" clause of the Assignment states "this Assignment is being given as additional security for the Loan." Assignment at p.1;
>
> (b) Paragraph 5(c) of the Assignment states "Assignee in respect of the Leases and Rents shall have all of the rights and remedies of a secured party under the Uniform Commercial Code . . . ." Assignment at ¶ 5(c);
>
> (c) Paragraph 6 of the Assignment states "[a]fter the occurrence and during the continuance of an Event of Default, the Rents received or held by the Assignor or Assignee shall be applied in accordance with the terms of the Loan Documents." Assignment at ¶ 6;
>
> (d) Paragraph 8 of the Assignment states "Assignee, by the acceptance of this Assignment, agrees that when all of the Debt shall have been paid in full, this Assignment shall terminate . . . ." Assignment at ¶ 8;
>
> (e) Paragraph 2 conditions assignment of the rents on an "Event of Default…" Assignment at ¶ 2; and
>
> (f) Paragraph 11 states that that the Assignee is not obligated to perform or discharge "any obligation, duty or liability under any of the Leases." Assignment at ¶ 11.

28. Read as a whole, the Assignment clearly was given as additional security

for the Mortgage; it was "intended as secondary security which would operate *in futuro.*" Where

an assignment "create[s] a future right which would spring into being upon a later default," it is

not absolute. Vecchiarelli v. Garsal Realty, Inc., 111 Misc.2d 157, 443 N.Y.S.2d 622, 624

(N.Y.Sup.1980). "It is clear, beyond any doubt or debate, that the assignment of rents was intended to be nothing more than a security device. By its very terms, the assignment states that it was made for the purpose of securing a contemporaneously executed note. Furthermore, upon full payment of the note, the conveyance would be defeated because the assignment provided that it was to become void. Under these circumstances, nothing more is required to prove that there was no absolute conveyance to Travelers. Indeed, the contractual provision voiding the assignment upon full payment of the debt due Travelers means that agreement constitutes nothing more than a mortgage as a matter of law." <u>Matter of Willows of Coventry, Ltd. Partnership</u>, 154 B.R. 959, 964 (Bankr.N.D.Ind.1993). The language in paragraph 2 of the Assignment alone does not defeat the fact that the Assignment was given as additional security for the Mortgage.

29. Moreover, because New York is a "lien theory" state and not a "title theory" state, "[w]hat this means is that no transfer of title to the leases is effectuated when an assignment is given as **security for a mortgage loan regardless of the language used in the assignment instrument**." <u>Dream Team Associates, LLC v. Broadway City, LLC</u>, Index No. L & T 62346/03, 2003 WL 21203342, at *2 (N.Y. Civ.Ct. May 7, 2003) (emphasis added) (citing <u>Suderov v. Ogle</u>, 149 Misc.2d 906, 574 N.Y.S.2d 249, 251 (App.Div. 2nd Dept. 1991)). <u>See also Lt Propco, LLC v. Carousel Center Co., L.P.</u>, 68 A.D.3d 1695, 893 N.Y.S.2d 395, 396 (App.Div. 4th Dept. 2009) ("[b]ecause New York operates under a lien theory as opposed to a title theory with respect to mortgages, the language used in an assignment instrument itself is not determinative of what rights are actually transferred.").

30.     In <u>Suderov v. Ogle</u>, 149 Misc.2d 906, 574 N.Y.S.2d 249, 251 (App.Div. 2nd Dept. 1991), the Appellate Division held that:

> When a lease is assigned as **security for a mortgage**, no matter what language is used in the instrument of assignment, no transfer of title to the lease can be effected. 'Whenever property is transferred, no matter in what form or by what conveyance, as security for ... a debt, the conveyance creates a mortgage ... and the parties ... are subject only to the obligations of a mortgagor and mortgagee.'

<u>Id.</u> at 251. (emphasis added) (citing <u>Mooney v. Byrne</u>, 163 N.Y. 86, 57 N.E. 163 (1900) ("When a lease is assigned as security for a mortgage, no matter what language is used in the instrument of assignment, no transfer of title to the lease can be effected"); <u>Carr v. Carr</u>, 52 N.Y. 251 (1873)).

31.     In addition, where, as here, an assignment of rents is given as additional security for the repayment of a mortgage, "[t]he courts of this State and the Federal courts, applying the law of this State, have held that 'an assignment of rents' clause . . . is not self-executing, but becomes effective only upon foreclosure or upon the appointment of a receiver of the rents of the mortgaged property." <u>Ganbaum v. Rockwood Realty Corp.</u>, 62 Misc.2d 391,393, 308 N.Y.S.2d 436, 438 (N.Y.Sup. 1970) (citations omitted).

32.     Thus, in New York, "an assignment of rent as an additional security is similar to a mortgage; even though a security interest may be perfected upon recordation, full enjoyment of the benefits of the security is not available until additional legal steps are undertaken.   Just as a holder of a properly recorded mortgage may not take possession and sell mortgaged property merely upon a default without a foreclosure and sale, so an assignee of rents as additional security may not receive those rents without the additional step of obtaining possession through the appointment of a receiver." <u>In re Financial Center</u>

Associates of East Meadow, L.P., 140 B.R. 829, 833 (Bankr. E.D.N.Y.1992).   Here, contrary to the Bank's assertion that its mere possession of the rents bestowed title on it, the Bank was required to take the requisite legal steps.  It did not do so.

33.     The cases cited by the Bank are factually distinguishable and do not lead to a different result.  Contrary to the Bank's assertion that the provision in Federal Home Loan Mortgage Corp. v. Dutch Lane Associates, 775 F.Supp. 133 (S.D.N.Y. 1991), and its progeny are "virtually identical" to that in the Assignment, Dutch Lane involved an absolute assignment.  "[T]he mortgagor had, at no time, any "independent right to any of the rents it received."  Id. at 140.   The assignment of rents was *in praesenti* (immediately effective).  The assignment of rent provision provided that the borrower:

> [a]ssigns and transfers to Lender [FHLMC] all rents
> and revenues of the Property, including those now due,
> past due, or to become due . . .

Id. at 139.

34.     The assignment of rents provision applied both to those rents already due as well as "rents accumulating after notice of default has been provided."  Id. at 140. Unlike the case here, where the rents were intended only to serve as additional security, in Dutch Lane [t]he obligation to turn over the rents "st[ood] independently from the mortgage installments for the principal and interest."  Id.   The assignment "was intended by the parties to be absolute, unqualified and immediately effective.  That is to say, the assignment did not merely create a future right which would spring into being upon a later default." Vecchiarelli, 111 Misc.2d at 159, 443 N.Y.S.2d 622.

35.     As stated by the District Court in <u>ABN AMRO Bank N.V. v.</u>

<u>Carmania Corp. N.V. (In re Carmania Corp. N.V.)</u>, 154 B.R. 160 (S.D.N.Y.1993), "whether

an assignment of rents is absolute or conditional affects its enforceability.  The assignment

of rents clause at issue here constituted a pledge of rents as security in case of default on the

mortgage and not an absolute assignment, because the rents are assigned as 'further

security,' and the Bank's right to collect them is triggered only 'upon the occurrence of a

default.'  Under New York law, such a clause creates a security interest 'to which the

pledgee does not become entitled until he asserts his rights.'"  <u>Id.</u> at 164 (internal citations

omitted).  Such "a conditional assignment of rents becomes enforceable through entry into

possession [of the property] or by the appointment of a receiver to collect rents.  <u>In re</u>

<u>Northport Marina Associates</u>, 136 B.R. 911, 916-917 (Bankr.E.D.N.Y.1992); <u>Ganbaum v.</u>

<u>Rockwood Realty Corp.</u>, 62 Misc.2d 391, 308 N.Y.S.2d 436, 437 (1970); <u>New York Life</u>

<u>Ins. Co. v. Fulton Dev. Corp.</u>, 265 N.Y. 348, 352, 193 N.E. 169, 171 (1934).

36.     The Bank's reliance on <u>In re Loco Realty Corp.</u>, Case No. 09-11785,

2009 WL 2883050 (Bankr. S.D.N.Y. June 25, 2009), as support for its position is misplaced.

Although the Bank asserts that the provision at issue in <u>Loco Realty</u> "is virtually identical"

to the one here, the Bank ignores the language of the Assignment itself, which clearly

indicate that it was given as security for the repayment of the Mortgage.

37.     Even under the facts of that case, in which the assignment was

absolute and not given as security, Judge Gonzalez held that "under New York law, 'an

assignment of rents clause in a mortgage is not self-executing and operates merely as a

pledge of the rents, to which the pledgee does not become entitled until he asserts his right

by taking affirmative steps, such as the appointment of a receiver to collect the rents for the benefit of the mortgagee, or obtaining an order for the sequestration of the rents.'"  Id. at *5 (quoting In re Pine Lake Village Apartment Co., 17 B.R. 829, 833 (Bankr.S.D.N.Y.1982) (citing Sullivan v. Rosson, 223 N.Y. 217, 119 N.E. 405(1918); In re Brose, 254 Fed. 664 (2d Cir.1918); In re Hines, 88 F.2d 423 (2d Cir.1937)).

38.     Here, unlike in Loco, the Bank did not take the requisite legal steps of having a receiver appointed or obtaining a sequestration order and, therefore, it never became entitled to the rents.  See also In re Financial Center Associates of East Meadow, L.P., 140 B.R. 829, 833 (Bankr. E.D.N.Y.1992).

39.     Because the rents are property of the Debtor's estate and can be used by the Debtor to confirm its Plan, the Bank is not entitled to relief in so far as such relief is premised on its assumption that the rents are not estate property.  Therefore, the relief sought pursuant to sections 362(d)(2) and 362(d)(3) (A)of the Bankruptcy Code should be denied and this Court should disregard the Bank's assumption as one of the bases for relief under section 362(d)(1) of the Bankruptcy Code.

**The Debtor's Petition was Filed in "Good Faith"**

40.     The Bank asserts that the automatic stay should be lifted "for cause," pursuant to section 362(d)(1) of the Bankruptcy Code, because the Debtor filed its petition in "bad faith."

41.     Although the Bank correctly observes that courts routinely hold that "bad faith" constitutes "cause" under section 362(d)(1) of the Bankruptcy Code, and it cites to  In re C-TC [9th] Ave. Partnership, 113 F.3d 1304 (2d Cir. 1997) for the indicia of "bad faith," it utilizes

a mechanical approach with respect to the application of the factors. This approach is discouraged in this district. Courts "repeatedly caution . . . not to apply such factors mechanically." In re 68 West 127 Street, LLC, 285 B.R. 838, 844 (Bankr. S.D.N.Y. 2002). "Indeed, the mechanical approach . . . would automatically doom almost every single asset case, ab initio." In re Willows of Coventry Ltd. P'ship, 154 B.R. 959, 967 (Bankr. N.D.Ind.1993).

42.    Rather, in this Circuit, "[t]he existence of 'bad faith' depends not on any one specific factor but on a combination of factors determined after careful examination of the facts of the particular debtor's case." In re 68 West 127 Street, LLC, 285 B.R. 838, 844. The list set forth in C-TC Partnership "ultimately do no more than assist the exercise of discretion in deciding when a debtor has improperly invoked the Bankruptcy Code, or is improperly hiding behind the automatic stay to speculate with the creditor's collateral, because it is not able, or not trying, to confirm a chapter 11 plan." Id.

43.    "[W]hen faced with a motion to lift the stay on bad faith grounds, a judge must conduct a careful analysis similar to that performed with a motion to dismiss a case on bad faith grounds. In both cases, the relief sought is an extraordinary remedy that requires careful examination of the facts on a case-by-case basis . . . ." In re 234-6 West 22nd St., 214 B.R. 751, 757 (Bankr. S.D.N.Y.1997).

44.    Finally, in this Circuit, "[b]ad faith has both an objective and subjective element; the proponent of bad faith must show "both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with the spirit of the Bankruptcy Code." In re Eatman, 182 B.R. 386, 392 (Bankr. S.D.N.Y.1995). See also In re Kingston Square Assocs., 214 B.R. 713, 725

(Bankr. S.D.N.Y.1997) (a determination of "bad faith" requires a movant to establish "**both** objective futility of the reorganization process **and** subjective bad faith in filing the petition.") (emphasis in original).

45.     The Bank cites cases that are factually inapposite.  Moreover, it points to no evidence that points to the Debtor's subjective bad faith when it filed its petition.  In fact, it ignores that component of the <u>C- TC Partnership</u> test.  Although it is true that this is a single asset real estate case and the Bank's secured claim is large in relation to the claims of the other creditors, the other factors of the <u>C- TC Partnership</u> test weigh decidedly in the Debtor's favor.

46.     The Bank cites <u>In re HBA East, Inc.</u>, 87 B.R. 248 (Bankr. E.D.N.Y. 1988), as support for its assertion that "this is a two party dispute that can and should be resolved in the Foreclosure Action in state court."  In <u>HBA East</u>, the debtors filed their petitions on the eve of their answering date in a Texas state court fraud and breach of fiduciary duty action.  Other than the disputed claims of the plaintiffs, the debtors had no significant debt.  The bankruptcy court found that "[t]hese Chapter 11 cases do not represent efforts pitched to a 'business reorganization' or to 'restructure a business's finances.'  They are essentially a two-party civil lawsuit involving non-bankruptcy law brought in the bankruptcy court in the guise of being a reorganization of some sort under Chapter 11.  <u>Id.</u> at 260.  This is in sharp contrast to the facts present here where, as the Bank acknowledges readily, there is no pending litigation against the Debtor; the debt due the Bank has been reduced to judgment, the Debtor's only asset is at risk, and the Debtor has been working expeditiously to achieve a successful reorganization.

47.     The Bank next asserts that the timing of the Debtor's filing evidences an intent to delay or frustrate its legitimate efforts to enforce its rights because the Debtor filed its

petition on the eve of foreclosure.  Motion at ¶ 50(5) The Bank cites In re Wally Findlay

Galleries (New York), Inc., 36 B.R. 849 (Bankr. S.D.N.Y.1984), as support for this contention.

There, the debtor filed its bankruptcy petition on the same day that a large judgment was entered

against it in a state court action.  In dismissing the chapter 11 case as having been filed in "bad

faith," the bankruptcy court held that that it was clear that "the debtor did not file its petition to

reorganize, but rather as a litigating tactic in its dispute with [the lenders]."  Id. at 850.  The

debtor did not have "sufficient assets to post a bond in order to stay these judgments pending

appeal . . . [and] filed its petition herein to avoid the consequences of adverse state court

decisions while it continues litigating.  This court should not, and will not, act as a substitute for

a supersedeas bond of state court proceedings."  Id.

        48.    The facts of Wally Findlay differ significantly from those present here; the

Debtor filed its petition on the eve of the Bank's foreclosure sale in order to invoke the automatic

stay and obtain an opportunity to restructure its indebtedness through a plan of reorganization.

As Judge Drain noted in In re 68 West 127 Street, LLC,  "notwithstanding the routinely cited bad

faith factor of an eve-of-foreclosure bankruptcy filing, apparently *no* court has applied that factor

in isolation to find bad faith.  Indeed, several courts have observed that resort to bankruptcy to

stave off foreclosure is consistent with bankruptcy's goals of preserving going concerns and

maximizing value."  285 B.R. 838, 845. (emphasis in original).  See also In re Kingston Square

Assocs., 214 B.R. 713, 734, 736-37 (eve-of-foreclosure filing was not in bad faith, despite

circumvention of "bankruptcy remote" board structure imposed by primary, secured creditor,

because bankruptcy preserved value for handful of unsecured creditors and debtor's limited

partners); In re Foundry of Barrington P'ship, 129 B.R. 550, 556 (Bankr.N.D.Ill.1991) (fully

encumbered single-asset debtor with few non-insider creditors did not file in bad faith, because debtor had a reasonable prospect, supported by evidence of active negotiations with several prospective tenants, of confirming a plan); In re Levinsky, 23 B.R. 210, 218-219 (Bankr.E.D.N.Y.1982) (debtor's filing was not in bad faith notwithstanding eve-of-bankruptcy transfer of property to newly formed entity with minimal unsecured debt, because transfer did not impair any substantive or procedural right of the complaining creditor).

49.     The Bank asserts that "the Debtor does not have sufficient cash flow to fund a plan of reorganization."  Motion at ¶ 50(6-7)  Again, the Bank cites HBA East, a case that is factually inapposite.  In that case, the Debtors' only asset was boxing promotional contracts and the bankruptcy court found that "[n]ot only are these assets highly speculative, but even more importantly their ownership and control are vigorously disputed . . . ."  Id. at 261.  The facts of HBA East are in direct contrast to those present here.  The Debtor's asset is not speculative, the Property now is fully rented, and, contrary to the Bank's assertion, the rents are sufficient to fund its Plan.   For the fiscal year ended December 31, 2011, the Property will generate base rent of approximately $680,000[2] and reimbursement revenue of approximately $30,000.  Operating expenses, i.e., real estate taxes, maintenance, and insurance, are projected to be approximately $100,000.  The net operating income of approximately $610,000 will be sufficient to meet annual debt service of approximately $600,000.

**The Sonnax Factors Are Not  Applicable**

50.     The Bank states that in deciding whether to grant relief from the stay to allow it to continue its foreclosure, this Court also should "look to" the factors set forth by the

---

[2] For 2012, the base rent increases to approximately $750,000.

Court of Appeals for the Second Circuit in Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1285 (2d Cir.1990). However, here, where there is no pending litigation-- the Bank has a judgment-- the Sonnax factors do not apply. Nevertheless, the Debtor easily satisfies them.

51.     The twelve (12) Sonnax factors are as follows:

    a.    whether relief would result in partial or complete resolution of issues;

    b.    lack of any connection with or interference with bankruptcy case;

    c.    whether other proceeding involves debtor as fiduciary;

    d.    whether specialized tribunal with necessary expertise has been established to hear cause of action;

    e.    whether debtor's insurer has assumed full responsibility for a defense;

    f.    whether the action primarily involves third parties;

    g.    whether litigation in another forum would prejudice interests of other creditors;

    h.    whether judgment claim arising from other action is subject to equitable subordination;

    i.    whether movant's success in other proceeding would result in judicial lien avoidable by debtor;

    j.    interests of judicial economy and expeditious and economical resolution of litigation;

    k.    whether parties are ready for trial in other proceeding; and

l.       impact of stay on parties and balance of harms.

52.      As stated by Judge Glenn in <u>In re Project Orange Associates, LLC</u>, 432 B.R. 89, 103 (Bankr.S.D.N.Y.2010),  "[i]n determining whether the stay should be modified or terminated for cause, courts in this Circuit and elsewhere either (1) analyze twelve factors enumerated by the Second Circuit in <u>Sonnax</u> or (2) engage in fact-intensive inquiries which appear to be loosely based on the <u>Sonnax</u> factors . . ."   In addition, "'[a] court may consider the policies reflected in the bankruptcy code, and the interests of the debtor, other creditors and any other interested parties.'"  <u>Id.</u> (quoting <u>In re Brown</u>, 311 B.R. 409, 412-13 (E.D.Pa.2004)).

53.      Although not all of the <u>Sonnax</u> factors will be relevant in each case, the final decision to lift the stay depends upon the facts underlying the particular motion.  <u>In re Fiber Optek Interconnect</u>, Case No. 05-30045 (cgm), 2006 WL 3065521**,** at *4 (Bankr.S.D.N.Y. Oct. 27, 2006) (citing <u>In re Mazzeo</u>, 167 F.3d 139, 143 (2d Cir.1999)); <u>See</u> also <u>In re Bogdanovich</u>, 292 F.3d 104, 110 (2d Cir. 2002).

54.      Here, application of the relevant <u>Sonnax</u> factors, as well as a consideration of the interests of the Debtor, the other creditors in the case, and the purpose of the Bankruptcy Code, leads to the conclusion that the Bank's request for relief under section 362(d)(1) of the Bankruptcy Code should be denied.

55.      The Debtor easily satisfies the 2nd, 7th, 10th, and 12th <u>Sonnax </u>factors.

a.       <u>Lack of any connection with or interference with bankruptcy case.</u>

Although the Bank ignores this factor, permitting the foreclosure to go forward clearly would ruin the Debtor's efforts to reorganize.

b. <u>Whether litigation in another forum would prejudice interests of other creditors.</u>

Although the Bank ignores this factor, there is no litigation in another forum. However, permitting the foreclosure to proceed would prejudice the interests of the Debtor's other creditors by preventing any recovery by them through the Debtor's Plan.

c. <u>Interests of judicial economy and expeditious and economical resolution of litigation.</u>

Although the Bank states that the interest of judicial economy and expeditious resolution of the litigation weighs in its favor, as already discussed, the Foreclosure Action has concluded.

d. <u>Impact of stay on parties and balance of harms.</u>

The Bank states that the balance of harms weighs in its favor "because the Lender will be able to control the unsecured class and thus prevent the confirmation of any plan proposed by the Debtor." <u>Motion</u> at ¶ 53. The Bank is mistaken. Granting the Motion will destroy the Debtor. On the other hand, denying the Motion will allow confirmation of the Plan that pays the Bank in full. Under the Plan, the Debtor proposes to cure and reinstate the loan, leaving the Bank's claim (secured and unsecured) unimpaired. Consequently, under section 1126(f) of the Bankruptcy Code, the Bank will be conclusively presumed to have accepted the Plan, and solicitation of the Bank's acceptance or rejection of the Plan is not required.

56. As already discussed, the current rent roll is more than adequate to fund current debt service obligations under the Bank's loan as reinstated. Additional capital will be necessary to fund the cure obligation, pay unsecured creditors 25% of their allowed claims, and pay holders of administrative expense claims in full. The Debtor has been soliciting

contributions of debt and/or equity from third parties for several months, since prior to the commencement of the chapter 11 case. Recently, a third party investor, with whom the Debtor has been negotiating for several weeks, signed a pre-negotiation agreement with CWCapital, the servicer of the Bank's loan, and is in negotiations to restructure the loan.

## CONCLUSION

57. Based upon the foregoing, the Debtor respectfully requests that this Court deny the Motion and grant it such other and further relief as is just and proper.

Dated: New York, New York
January 31, 2011

ROSEN & ASSOCIATES, P.C.
Attorneys for the Debtor
  and Debtor in Possession

By: /s/ Nancy L. Kourland
        Nancy L. Kourland

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100

# EXHIBIT A

THIS DOCUMENT PREPARED BY AND
RECORDING REQUESTED BY AND WHEN
RECORDED MAIL TO:

Klehr, Harrison, Harvey, Branzburg & Ellers LLP
260 S. Broad Street
Philadelphia, Pennsylvania 19102
Attention: Jon S. Robins

---

## ASSIGNMENT OF LEASES AND RENTS

Dated and effective as of July _31_, 2006

between

### SOHO 25 RETAIL, LLC
as Assignor

and

### GREENWICH CAPITAL FINANCIAL PRODUCTS, INC.
as Assignee

---

THIS ASSIGNMENT OF LEASES AND RENTS (this "*Assignment*") dated and effective as of the 31st day of July, 2006 made by SOHO 25 RETAIL, LLC, a New York limited liability company, having an office at c/o Urban Residential, LLC, 599 Broadway, Suite 1000, New York, New York 10012 ("*Assignor*"), to GREENWICH CAPITAL FINANCIAL PRODUCTS, INC., a Delaware corporation (together with its successors and assigns, hereinafter referred to as "*Assignee*"), having an address at 600 Steamboat Road, Greenwich, Connecticut 06830.

## W I T N E S S E T H :

WHEREAS, Assignor is the owner of a fee simple title to that certain parcel of real property (the "*Premises*") described in Exhibit A attached hereto, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and other improvements now or hereafter located thereon or therein (collectively, the "*Property*");

WHEREAS, Assignor and Assignee have entered into a certain Loan Agreement dated as of the date hereof (as amended, modified, restated, consolidated or supplemented from time to time, the "*Loan Agreement*") pursuant to which Assignee has agreed to make a secured loan to Assignor in the maximum principal amount of $8,500,000.00 (the "*Loan*").

WHEREAS, Assignor has executed a certain Amended and Restated Promissory Note in such principal amount (as the same may be amended, modified, restated, severed, consolidated, renewed, replaced, or supplemented from time to time, the "*Note*"), which is secured by, *inter alia*, that certain Mortgage and Mortgage Consolidation, Modification and Restatement, Assignment of Leases and Rents and Security Agreement (as amended from time to time, the "*Mortgage*") on the Property. ~~in~~ *the amount of the Loan and intended to be recorded simultaneously herewith*

WHEREAS, it is a condition to the obligation of Assignee to make the Loan to Assignor pursuant to the Loan Agreement that Assignor execute and deliver this Assignment;

WHEREAS, this Assignment is being given as additional security for the Loan; and

WHEREAS, capitalized terms used in this Assignment without definition have the respective meanings assigned to such terms in the Loan Agreement or the Mortgage, as the case may be, the terms of each of which are specifically incorporated by reference herein.

NOW, THEREFORE, for good and valuable consideration, receipt of which by the parties hereto is hereby acknowledged, and for the purpose of additionally securing the Debt, Assignor hereby assigns, transfers, conveys and sets over unto Assignee, all right, title and interest of Assignor in and to all Leases and all Rents;

TO HAVE AND TO HOLD the same unto Assignee, and its successors and assigns forever, upon the terms and conditions and for the uses hereinafter set forth.

And Assignor hereby further agrees as follows:

1. **Certain Representations, Warranties and Covenants**. Assignor represents, warrants and covenants to Assignee that:

(a) Except as expressly permitted under the Loan Agreement, the payment of the Rents to accrue under any Lease will not be waived, released, reduced, discounted or otherwise discharged or compromised by Assignor;

(b) Assignor has not performed, and will not perform, any acts, and has not executed, and will not execute, any instrument that would prevent Assignee from exercising its rights under this Assignment; and

(c) Assignor hereby authorizes and directs any tenant under any of the Leases and any successor to all or any part of the interests of any such tenant to pay directly to the applicable Clearing Account, in accordance with the terms of the Loan Agreement, the Rents due and to become due under such tenant's Lease, and such authorization and direction shall be sufficient warrant to the tenant to make future payments of Rents directly to the Clearing Account in accordance with the terms of the Loan Agreement without the necessity for further consent by Assignor.

2. **Assignment; Deferred Exercise of Rights**.

(a) As part of the consideration for the Debt, Assignor does hereby absolutely and unconditionally assign to Assignee all right, title and interest of Assignor in and to all present and future Leases and Rents, and this Assignment constitutes a present and absolute assignment and is intended to be unconditional and not as an assignment for additional security only. It is further intended that it not be necessary for Assignee to institute legal proceedings, absent any requirements of law or regulation to the contrary, to enforce the provisions hereof. Assignor hereby authorizes Assignee or its agents to collect the Rents; provided, however, that prior to an Event of Default, and subject at all times to the requirement that payments and deposits of Rents be made directly to the Clearing Account, Assignor shall have a revocable license, but limited as provided in this Assignment and in any of the other Loan Documents, to otherwise deal with, and enjoy the rights of the lessor under, the Leases.

(b) Upon the occurrence and during the continuance of an Event of Default, and without the necessity of Assignee entering upon and taking and maintaining full control of the Property in person, by agent or by court-appointed receiver, the license referred to in paragraph (a) above shall immediately be revoked and Assignee shall have the right at its option, to exercise all rights and remedies contained in the Loan Documents, or otherwise available at law or in equity.

3. **Rents Held in Trust by Assignor**. Rents held or received by Assignor shall be held or received by Assignor as trustee for the benefit of Assignee only and shall immediately be deposited directly to the applicable Clearing Account in accordance with the terms of the Loan Agreement.

4. **Effect on Rights Under Other Documents**. Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the powers and rights granted it

2

hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under any of the other Loan Documents, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms of the other Loan Documents. The rights of Assignee under the other Loan Documents may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder. This Assignment is intended to be supplementary to and not in substitution for or in derogation of any assignment of rents or grant of a security interest contained in any of the other Loan Documents.

5. **Event of Default**. Upon or at any time after the occurrence and during the continuance of an Event of Default, then in addition to and without limiting any of Assignee's rights and remedies hereunder and under the other Loan Documents and as otherwise available at law or in equity:

(a)     Assignee may, at its option, without waiving such Event of Default and without regard to the adequacy of the security for the Debt, either in person or by agent, without bringing any action or proceeding, or by a receiver appointed by a court, without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents, including those past-due and unpaid, for application to the payment of the Debt in accordance with the terms of the Loan Documents, and Assignee may enter into, and to the extent that Assignor would have the right to do so, cancel, enforce or modify any Lease all in Assignee's reasonable discretion. The exercise by Assignee of the option granted it in this Section and the collection of the Rents and the application thereof as herein provided shall not be considered a waiver of any Event of Default.

(b)     Assignor hereby acknowledges and agrees that payment of any item of Rent by a Person to Assignee as hereinabove provided shall constitute payment in full of such item of Rent by such Person, as fully and with the same effect as if it had been paid to Assignor.

(c)     Assignee in respect of the Leases and Rents shall have all of the rights and remedies of a secured party under the Uniform Commercial Code as in effect in the State in which such rights and remedies are asserted as described in Section 12(b) to the extent of such rights thereunder and additional rights and remedies to which a secured party is entitled under the laws in effect in any jurisdiction where any rights and remedies hereunder may be asserted.

6. **Application of Rents and Proceeds**. After the occurrence and during the continuance of an Event of Default, Rents received or held by Assignor or Assignee shall be applied in accordance with the terms of the Loan Documents.

7. **Attorney-in-Fact**. Upon the occurrence and during the continuance of any Event of Default, Assignor hereby appoints Assignee the attorney-in-fact of Assignor to take any action and execute any instruments that Assignor is obligated, or has covenanted and agreed under the Loan Agreement or the other Loan Documents to take or execute, which appointment as attorney-in-fact is irrevocable and coupled with an interest. Without limiting the generality of the foregoing provisions of this Section 7, upon the occurrence and during the continuance of an Event of Default, Assignor does hereby irrevocably appoint Assignee as its attorney-in-fact with

3

full power, in the name and stead of Assignor to demand, collect, receive and give complete acquittance for any and all of the Rents now due or that may hereafter become due, and in Assignee's reasonable discretion, to file any claim, to take any other action, to institute any proceeding or to make any settlement of any claim, either in its own name or in the name of Assignor or otherwise, which Assignee may deem necessary or desirable in order to collect and enforce the payment of Rents.

8. **Termination**. Assignee, by the acceptance of this Assignment, agrees that when all of the Debt shall have been paid in full, this Assignment shall terminate, and Assignee shall execute and deliver to Assignor, upon such termination such instruments of termination or re-assignment and Uniform Commercial Code termination statements, all without recourse and without any representation or warranty whatsoever, and, to the extent required, all in recordable form, as shall be reasonably requested by Assignor.

9. **Expenses**. Assignor agrees to pay to Assignee all reasonable out-of-pocket expenses (including reasonable expenses for attorneys' fees and costs of every kind) of, or incident to, the enforcement of any of the provisions of this Assignment or performance by Assignee of any obligation of Assignor hereunder which Assignor has failed or refused to perform.

10. **Further Assurances**. Assignor agrees that, from time to time upon the written request of Assignee, it will give, execute, deliver, file and/or record any financing statements, notice, instrument, document, agreement or other papers and do such other acts and things that may be reasonably necessary and desirable to create, preserve, perfect or validate this Assignment, to enable Assignee to exercise and enforce its rights hereunder with respect to this Assignment or to otherwise carry out the purposes and intent of this Assignment.

11. **No Obligation by Assignee**. By virtue of this Assignment, Assignee shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under any of the Leases. This Assignment shall not operate to constitute Assignee as a lender in possession of the Property or to place responsibility for the control, care, management or repair of the Property upon Assignee, nor shall it operate to make Assignee responsible or liable for any waste committed on the Property by any tenant or other party in possession or for any dangerous or defective condition of the Property or for any negligence in the management, upkeep, repair or control thereof, unless any of the foregoing was caused by Assignee's bad faith, gross negligence or willful misconduct.

12. **Miscellaneous**.

(a) No failure on the part of Assignee or any of its agents to exercise, and no course of dealing with respect to, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise by Assignee or any of its agents of any right, power or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right, power or remedy. Subject to Section 16 hereof, the remedies herein are cumulative and are not exclusive of any remedies provided by law.

(b)     WITH RESPECT TO MATTERS RELATING TO THE CREATION, PERFECTION AND PROCEDURES RELATING TO THE ENFORCEMENT OF THIS ASSIGNMENT, THIS ASSIGNMENT SHALL BE GOVERNED BY, AND BE CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, EXCEPT AS EXPRESSLY SET FORTH ABOVE IN THIS PARAGRAPH AND TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF NEW YORK SHALL GOVERN ALL MATTERS RELATING TO THIS ASSIGNMENT AND THE OTHER LOAN DOCUMENTS AND ALL OF THE INDEBTEDNESS OR OBLIGATIONS ARISING HEREUNDER OR THEREUNDER.   ALL PROVISIONS OF THE LOAN AGREEMENT INCORPORATED HEREIN BY REFERENCE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, AS SET FORTH IN THE GOVERNING LAW PROVISION OF THE LOAN AGREEMENT.

(c)     Subject to Section 16 hereof, all rights and remedies set forth in this Assignment are cumulative, and Assignee may recover judgment thereon, issue execution therefor, and resort to every other right or remedy available at law or in equity, without first exhausting and without affecting or impairing the security of any right or remedy afforded hereby; and no such right or remedy set forth in this Assignment shall be deemed exclusive of any of the remedies or rights granted to Assignee in any of the Loan Documents.  Nothing contained in this Assignment shall be deemed to limit or restrict the rights and remedies of Assignee under the Loan Agreement or any of the other Loan Documents.

(d)     Until the indebtedness and all other obligations secured by the Loan Documents is paid in full, Assignor will, upon Assignee's reasonable request thereof, deliver from time to time to Assignee executed originals to the extent available, otherwise photocopies certified by Assignor as true, correct and complete, of executed originals, of any and all existing Leases to which Assignor is a party, and executed originals, or photocopies of executed originals, so certified by Assignor, if an executed original is not available, of all other and future Leases to which Assignor is a party, and upon request of Assignee, will specifically transfer and assign to Assignee such other and future Leases upon the same terms and conditions as herein contained.

(e)     Assignor represents that it:  (i) has been advised that Assignee engages in the business of real estate financings and other real estate transactions and investments which may be viewed as adverse to or competitive with the business of Assignor or its affiliates;   (ii) is represented by competent counsel and has consulted counsel before executing this Assignment; and (iii) has relied solely on its own judgment and on its counsel and advisors in entering into the transaction(s) contemplated hereby without relying in any manner on any statements, representations or recommendations of Assignee or any parent, subsidiary or affiliate of Assignee.

13.     **No Oral Change**.  This Assignment may not be amended except by an instrument in writing signed by Assignor and Assignee.

14.     **Successors and Assigns**.  Assignor may not assign its rights under this Assignment except as permitted under the Loan Agreement.  Subject to the foregoing, this

Assignment shall be binding upon, and shall inure to the benefit of, Assignor and Assignee and their respective successors and assigns.

15. **Notices**. All notices, requests and other communications provided for herein shall be given or made in writing in the manner specified in the Loan Agreement.

16. **Exculpation**. It is expressly agreed that recourse against Assignor for failure to perform and observe its obligations contained in this Assignment shall be limited as and to the extent provided in Section 10.1 of the Loan Agreement.

17. **Integration**. In the event of any conflict or inconsistency between this Assignment and the Loan Agreement, the terms and provisions of the Loan Agreement shall govern and control.

[Signature Page Follows]

IN WITNESS WHEREOF, this Assignment has been duly executed by Assignor as of the day and year first above written.

SOHO 25 RETAIL, LLC,
a New York limited liability company

By:   Soho 25 Retail Holding Company LLC,
      a Delaware limited liability company,
      its sole member

     By:   Metropolitan Development Holdings II, LLC,
          a New York limited liability company,
          its managing member

          By:   Metropolitan Housing Partners, LLC,
              a New York limited liability company,
              its managing member

              By:  _____
              Name:  Christopher H. Martorella
              Title:  Sole Member

STATE OF New York :

COUNTY OF New York :    SS.

        On the 26ᵗʰ day of July in the year 2006, before me, a Notary Public in and for the said State, personally appeared Christopher H. Martorella, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on this instrument, the person, or the entity upon behalf of which the person acted, executed this instrument.

Notary Public

(NOTARIAL SEAL)

                   My Commission Expires:

GREGORY J SEITZ
Notary Public, State of New York
No. 02SE6012668
Qualified in New York County
Commission Expires August 31, 20 _06_

Assignment of Leases and Rents – Notary Page

## EXHIBIT A

### Description of Property

The Condominium Units (the "Units") in the Building known as Soho 25 located at and known as and by street number 25 West Houston Street, New York, New York, designated and described as Unit Nos. Commercial 1 and Commercial 2 in the Declaration establishing a plan for condominium ownership of said Building and the land upon which it is situate under Article 9-B of the Real Property Law of the State of New York, dated 7/14/2004 and recorded 8/30/2004 in the Office of the Register of the City of New York, County of New York under CRFN 2004000537634, said Units also being designated as Tax Lots 1232 and 1233 in Block 513 of Section 2 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York and on the Floor Plans of the said Building, certified by Henry Thomas O'Hara, Jr., Architect, on 8/18/2004 and filed in the Real Property Assessment Department of the City of New York on 8/19/2004 as Condominium Plan No. 1390 and also filed in the City Register's Office on 8/30/2004 as Condominium Map CRFN 2004000537635.

TOGETHER with an undivided 5.59% and 9.46% interest, respectively, in Common Elements of the Condominium as described in the Declaration.

The land upon which the Building containing the Unit is situate is described as follows:

### Overall Description:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County, and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the westerly side of Mercer Street and the southerly side of West Houston Street as further widened as show on Map filed 5/4/1949 as No. 2703;

RUNNING THENCE southerly along the westerly side of Mercer Street, 50 feet;

THENCE westerly along a line parallel with the former southerly side of West Houston Street, 100 feet;

THENCE northerly along a line parallel with the westerly side of Mercer Street, 25 feet;

THENCE westerly along a line parallel with the former southerly side of West Houston Street, 100 feet 3 inches (deed) 100 feet 4-1/8 inches (actual) to a point in the easterly side of Greene Street;

THENCE northerly along the said easterly side of Greene Street, 25 feet 0-3/8 inches (deed) 25 feet (actual) to the southerly side of West Houston Street as further widened, as shown on Map filed 5/4/1949 as No. 2703;

THENCE easterly along the said southerly side of West Houston Street as further widened, 200 feet 3-1/4 inches (deed) 200 feet 4-3/8 inches (actual) to the point or place of BEGINNING.

### Parcel I – Block 513 Lot 12:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the westerly side of Mercer Street and the southerly side of West Houston Street as further widened as shown on Map filed 5/4/1949 as No. 2703;

RUNNING THENCE southerly along the westerly side of Mercer Street, 24 feet 3-1/8 inches to a point, said point being distant 99 feet 2 inches southerly from the former southerly side of West Houston Street;

THENCE westerly along a line parallel with the former southerly side of West Houston Street, 100 feet;

THENCE southerly along a line parallel with the westerly side of Mercer Street, 10 feet;

THENCE westerly along a line parallel with the former southerly side of West Houston Street, 100 feet 3 inches to a point in the easterly side of Greene Street, distant 100 feet southerly from the former southerly side of West Houston Street;

THENCE northerly along the said easterly side of Greene Street, 25 feet 0-3/8 inches to the southerly side of West Houston Street as further widened, as shown on Map filed 5/4/1949 as No. 2703;

THENCE easterly along the said southerly side of West Houston Street as further widened, 200 feet 3-1/4 inches to the point or place of BEGINNING.

### Parcel II – Block 513 Lot 21:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County, and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Mercer Street, 99 feet 2 inches southerly from the former southerly side of West Houston Street and 24 feet 3-/28 inches southerly from the southerly side of West Houston Street as further widened as shown on Map filed 5/4/1949 as No. 2703;

RUNNING THENCE southerly along the westerly side of Mercer Street, 25 feet 10 inches;

THENCE westerly along a line parallel with the former southerly side of West Houston Street, 100 feet;

THENCE northerly along a line parallel with the westerly side of Mercer Street, 25 feet 10 inches;

THENCE easterly along a line parallel with the former southerly side of West Houston Street, 100 feet to the point or place of BEGINNING.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re                                                    Case No. 10-15114 (SHL)

SOHO 25 RETAIL, LLC,                                     Chapter 11

                                     Debtor.

------------------------------------------------------------x

**DECLARATION OF CHRISTOPHER H. MARTORELLA IN SUPPORT OF THE
OBJECTION OF THE DEBTOR AND DEBTOR IN POSSESSION TO
MOTION OF BANK OF AMERICA, AS TRUSTEE, FOR AN ORDER
PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE
<u>GRANTING RELIEF FROM THE AUTOMATIC STAY</u>**

I, Christopher H. Martorella, hereby declare under penalty of perjury as follows:

      1.     I am the sole member of Metropolitan Housing Partners, LLC, a New York

limited liability company.  Metropolitan Housing Partners, LLC is the managing member of

Metropolitan Development Holdings II, LLC, a New York limited liability company.

Metropolitan Development Holdings II, LLC is the managing member of Soho 25 Retail Holding

Company LLC, a Delaware limited liability company, which is the sole member of Soho 25

Retail, LLC the above-captioned debtor and debtor in possession (the "**Debtor**") and I submit this

declaration in support of the Debtor's objection (the "**Objection**") to the motion of Bank of

America, as Trustee, dated January 3, 2011, for an order pursuant to Section 362(d) of the

Bankruptcy Code granting relief from the automatic stay.

      2.     I have read the Objection, and the statements set forth therein are true and

correct to the best of my knowledge, information, and belief, and I adopt them as my own.

Executed on January 31, 2011

<u>/s/ Christopher H. Martorella</u>
Christopher H. Martorella